IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

UNITED STATES OF AMERICA,⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀⠀1:13-cr-422 (LMB)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀⠀1:15-cv-251 (LMB)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
TALEEK SHERROD SWINNEY,⠀⠀⠀⠀)
⠀⠀⠀a.k.a. "Kash,"⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀a.k.a. "Kash da Pimp,"⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀Movant.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)

MEMORANDUM OPINION

Before the Court is Taleek Sherrod Swinney's ("Swinney" or "movant")[1] pro se Motion

Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal

Custody [Dkt. No. 41], in which he argues that his guilty plea was involuntary and that he

received constitutionally ineffective assistance from his defense counsel, Federal Public

Defender Michael S. Nachmanoff ("Nachmanoff") and Assistant Public Defenders Gul R.

Gharbieh ("Gharbieh") and Todd M. Richman ("Richman") (collectively, "counsel"). The

government has responded to Swinney's motion and Nachmanoff and Richman have filed

declarations pursuant to 28 U.S.C. § 1746 that address Swinney's allegations of ineffective

assistance of counsel. See Gov't's Resp. in Opp'n to Def.'s Mot. to Vacate Under 28 U.S.C.

§ 2255 [Dkt. No. 49] ("Gov't Opp'n"); Decl. of Michael S. Nachmanoff, Esquire [Dkt. No. 49-1]

("Nachmanoff Decl."); Decl. of Todd M. Richman, Esquire [Dkt. No. 49-2] ("Richman Decl.").

Swinney has filed a response to the government's opposition and to the declarations. See Def.'s

---

[1] In addition to the aliases listed above, Swinney was also known as "Ty," "Fly Ty Da One," and
"Taleek Swieney." Statement of Facts [Dkt. No. 23] ¶ 1.

Mot. in Resp. to Gov't's Request to Deny Def.'s Mot. to Vacate Under 28 U.S.C. § 2255 [Dkt. No. 54] ("Swinney Resp.").

Having reviewed the entire record, the Court finds no merit to Swinney's motion, which will be dismissed without the need for an evidentiary hearing.

## I.   BACKGROUND

On September 5, 2013, Swinney was arrested in the Eastern District of New York based on a criminal complaint alleging a violation of 18 U.S.C. § 1591, Sex Trafficking by Force, Fraud, and Coercion. See Joint Mot. to Extend Time to File Indictment [Dkt. No. 15] ("Mot. to Extend") ¶ 1; see also Arrest Warrant [Dkt. No. 7]. Swinney made his initial appearance in the United States District Court for the Eastern District of Virginia on September 18, 2013, at which time the Office of the Federal Public Defender was appointed to represent him. Nachmanoff Decl. ¶ 3. Gharbieh was assigned to represent Swinney, and Richman was assigned to assist her because she was pregnant at the time and also because the case involved serious allegations. Id. While Gharbieh represented Swinney, he waived his right to a preliminary hearing, see Waiver of a Prelim. Hr'g [Dkt. No. 13], and subsequently signed a joint motion to extend the Speedy Trial Act's deadline for seeking an indictment by 35 days, see Mot. to Extend ¶¶ 3, 5, which motion was granted on October 1, 2013. Order to Extend Time to File an Indictment [Dkt. No. 16] ("Order to Extend"), Oct. 1, 2013.

Subsequently, due to the likelihood that Gharbieh would have to take maternity leave before the conclusion of the case, Nachmanoff replaced Gharbieh as lead counsel, while Richman remained involved in the case. Richman Decl. ¶¶ 3-4. On November 4, 2013, Swinney waived his right to prosecution by indictment and entered a guilty plea to a single-count criminal information charging him with Sex Trafficking by Force, Fraud, and Coercion, in violation of 18

2

U.S.C. § 1591(a) and (b)(1), pursuant to a binding, written plea agreement made under Fed. R. Crim. P. 11(c)(1)(C). See Tr. of Pre-Indictment Plea [Dkt. No. 46] ("Plea Tr.") 15:6-12, Nov. 4, 2013; see also Waiver of an Indictment [Dkt. No. 18]; Plea Agreement [Dkt. No. 22]. In doing so, Swinney stipulated to the accuracy of the Statement of Facts, which described how Swinney operated a prostitution venture in which he used threats, force, and violence to prostitute women and girls under the age of 18 in Virginia and a number of other states. Statement of Facts [Dkt. No. 23] ¶¶ 2, 5.

Although the single-count criminal information was based on Swinney's conduct towards victim "SG," the Statement of Facts listed at least nine victims in total. Id. ¶¶ 1, 6. The Statement of Facts also described how Swinney beat or otherwise used violence against the women and girls he prostituted and did so to SG almost daily, id. ¶ 12, forced SG to have an abortion, id. ¶ 26, and prostituted EP, a vulnerable person because she had just turned 18 years old days before meeting Swinney and had been transported to Florida for the purposes of prostitution, where she was stranded without money or identification. Id. ¶ 17.

In the plea agreement, Swinney agreed to certain guidelines calculations for the purposes of sentencing and agreed that a sentence within a range of 15 years to 34 years of imprisonment was appropriate in his case, with the understanding that the government would seek a sentence of 34 years. Plea Agreement ¶¶ 5-6. The Court accepted the binding rule plea under Fed. R. Crim. P. 11(c)(1)(C), finding that it was not unreasonable to limit Swinney's sentence to a maximum of 34 years even though the applicable statute provides for a maximum of life imprisonment. Plea Tr. 17:1-14. Under this agreement, Swinney agreed that he knew that EP was a vulnerable victim such that the two-level enhancement under § 3A1.1(b)(1) of the United States Sentencing Guidelines ("the Guidelines" or "U.S.S.G.") would apply to the offense level. See Plea Tr.

20:10-23; Plea Agreement ¶ 6(c). He further agreed that his role in the offense warranted a leadership enhancement under U.S.S.G. § 3B1.1, but he did not agree with the government as to the level of that enhancement. Plea Tr. 20:24-21:6; Plea Agreement ¶ 6(d).

Swinney later objected through counsel to the Presentence Investigation Report's [Dkt. No. 28] ("PSR") application of a four-level enhancement under § 3B1.1(a), arguing that his conduct warranted at most a two-level enhancement for acting as "an organizer, leader, manager, or supervisor," but not the greater enhancement for acting as a leader of "a criminal activity that involved five or more participants or was otherwise extensive." See Def.'s Mem. in Aid of Sentencing [Dkt. No. 29] ("Sentencing Mem.") at 4-6 (arguing that U.S.S.G. § 3B1.1(c), rather than § 3B1.1(a), should apply). Swinney also objected to the PSR's rejection of a two-level acceptance-of-responsibility reduction. Id. at 6. Swinney conceded, however, that the Court was not required to resolve his objections, because they would not change the advisory sentencing range. Id. at 4 n.2 (citing Fed. R. Crim. P. 32(i)(3)(B)). Moreover, under the plea agreement, Swinney consented to the entry of any orders pertaining to the mandatory restitution after sentencing and without limitation, Plea Agreement ¶ 10, and waived his right to appeal the sentence so long as it did not exceed the statutory maximum, id. ¶ 7, which he agreed meant that he had waived his right to appeal any sentence in excess of 34 years of imprisonment. Plea Tr. 24:10-25:1.

On February 7, 2014, Swinney was sentenced to 294 months in the custody of the United States Bureau of Prisons, with credit for time served, followed by 20 years of supervised release. J. in a Crim. Case [Dkt. No. 35] at 2-3, Feb. 7, 2014. He was also sentenced to pay restitution in the amount of $540,622.00. Restitution Order [Dkt. No. 37] at 1, Feb. 7, 2014. Swinney did not file an appeal, but filed his timely Motion to Vacate Under 28 U.S.C. § 2255 on February 4,

4

2015. See Dkt. No. 41-2 (envelope reflecting that Swinney's motion was mailed from the federal penitentiary in White Deer, Pennsylvania on February 4, which motion was docketed in this court's electronic filing system on February 10, 2015).

## II.    DISCUSSION

Swinney's various arguments that he merits collateral relief center on the voluntariness of his plea and the adequacy of his counsel. With respect to voluntariness, Swinney argues that he did not knowingly and voluntarily enter his plea because: (1) counsel told him he would receive a life sentence if he did not accept the plea agreement; (2) counsel generally misinformed him about the applicable sentencing range; (3) counsel used a third party to convince him to plead guilty; and (4) he was in pain and drowsy from pain medication during his plea colloquy. In his response to the government's opposition, Swinney raises a new argument that his waiver of rights to a timely indictment was involuntary because a defendant can never waive his rights under the Speedy Trial Act.

With respect to the adequacy of his counsel, Swinney argues that counsel was ineffective because they misinformed him about the potential sentencing range and did not tell him that he could not waive his speedy trial rights. Swinney further asserts that he received ineffective assistance of counsel because Gharbieh consented to the joint motion to extend the time for indictment and then failed to file a motion to dismiss the complaint for a violation of his speedy trial rights. He also contends that counsel failed to hire a mental health expert to provide mitigation evidence at the sentencing stage, did not ask for three downward departures during the sentencing proceedings, and did not argue against the enhancements imposed pursuant to the sentencing guidelines. Swinney further argues that Nachmanoff did not inform Swinney of the restitution amount and both failed to file an appeal and told Swinney that he had no right to

5

appeal. In his response brief, Swinney narrows his focus to Nachmanoff's failure to present

mitigation evidence of mental health issues, asserting for the first time that he told Nachmanoff

he suffers from Post-Traumatic Stress Disorder ("PTSD"). He also focuses on Nachmanoff's

failure to file a notice of appeal, arguing that the purported Speedy Trial Act violation was a

meritorious ground for appeal. The government contends that none of these allegations, even

liberally construed, entitle Swinney to relief under 28 U.S.C. § 2255.

### A. **Standard of Review**

Under 28 U.S.C. § 2255, a movant may collaterally attack a conviction or sentence that

was imposed in violation of the United States Constitution or its laws, where the court lacked

jurisdiction to impose the sentence, where the sentence exceeded the maximum sentence

authorized by law, or where the sentence or conviction is otherwise subject to collateral attack.

28 U.S.C. § 2255(a) (2008). A movant under § 2255 bears the burden of establishing grounds for

collateral relief by a preponderance of the evidence. See Vanater v. Boles, 377 F.2d 898, 900

(4th Cir. 1967).

The remedy provided by § 2255 "does not encompass all claimed errors in conviction and

sentencing." United States v. Addonizio, 442 U.S. 178, 185 (1979). Therefore, where a movant

seeks relief on the basis of an error of fact or law, as opposed to a constitutional or jurisdictional

defect, the scope of collateral attack is limited to "fundamental defect[s] which inherently result[]

in a complete miscarriage of justice." Id. (quoting Hill v. United States, 368 U.S. 424, 428

(1962)). Moreover, a motion pursuant to § 2255 "may not do service for an appeal," and

consequently claims that have been waived by a failure to appeal are procedurally defaulted

unless the movant can show "cause excusing his double procedural default" as well as "actual

prejudice resulting from the errors of which he complains." United States v. Frady, 456 U.S. 152,

6

165-68 (1982) (internal quotation marks omitted); see also United States v. Maybeck, 23 F.3d 888, 891-92 (4th Cir. 1994) (applying the Frady standard to "collateral challenges to unappealed guilty pleas"). A claim of constitutionally ineffective assistance of counsel, however, is not procedurally defaulted if not raised on a direct appeal and can be raised in a collateral attack on a conviction or sentence. See United States v. Martinez, 136 F.3d 972, 979 (4th Cir. 1998); United States v. DeFusco, 949 F.2d 114, 120-21 (4th Cir. 1991).

### B. Voluntariness of Guilty Plea

The first group of claims raised by Swinney relate to whether his guilty plea was voluntary. An appropriately conducted Rule 11 proceeding "raise[s] a strong presumption that the [defendant's] plea is final and binding," United States v. Lambey, 974 F.2d 1389, 1394 (4th Cir. 1992), and "a defendant's solemn declarations in open court affirming" a plea agreement "carry a strong presumption of verity" that "present[s] a formidable barrier in any subsequent collateral proceedings." United States v. White, 366 F.3d 291, 295-96 (4th Cir. 2004) (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)) (internal quotation marks omitted). Accordingly, a § 2255 movant who accepts a plea agreement "is bound by the representations he makes under oath during [his] plea colloquy" unless he presents "clear and convincing evidence" contradicting those representations. Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1299 (4th Cir. 1992).

This standard means that "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." United States v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005) (describing contradictory allegations not supported by clear and

7

convincing evidence as "always 'palpably incredible' and 'patently frivolous or false'"). A movant is met with an additional barrier to collateral relief when the terms of the plea agreement he accepted were favorable to him, making it "reasonable and prudent" to accept the plea and thereby serving as evidence of "the voluntary and intelligent character" of the movant's plea. See Fields, 956 F.2d at 1299; Thrasher v. United States, 721 F. Supp. 2d 480, 487-88 (E.D. Va. 2010).

Swinney argues that certain aspects of counsel's representation placed him under duress and rendered his agreement to the plea involuntary. Specifically, Swinney contends that counsel told him the only way to avoid a life sentence was to accept a pre-indictment plea, Mot. to Vacate 4; that Swinney "felt completely hopeless" during Gharbieh's representation because she was biased against him due to the allegations that he had mistreated pregnant women, id.; that he felt more "hopeless" after Gharbieh's "abandonment" of his case, id. at 21; that Nachmanoff coercively involved Charles Gallman, a family friend, to convince Swinney to accept the plea deal, id. at 5; that counsel refused to file a motion to dismiss the complaint and placed Swinney "under extreme stress and duress" by telling him "that if the motion did not work [Swinney] would spend his life in prison," id. at 6; that counsel told Swinney the sentencing enhancements agreed to in the plea were mandatory, id. at 13; and that counsel forced Swinney to go forward with the plea despite his complaints of drowsiness and pain and told him that delaying the proceedings would lead to a life sentence. Id. at 21.

Swinney's clear statements during his plea colloquy belie these allegations. As to the claim that he was coerced into pleading guilty, the plea colloquy shows that Swinney, who was under an affirmation to tell the truth, responded numerous times that his plea was voluntary.

8

Before starting the plea colloquy, the Court confirmed that Swinney had knowingly and

voluntarily agreed to waive indictment:

> THE COURT: And before you signed that waiver, did you discuss it thoroughly
> with your attorneys?
> THE DEFENDANT: Yes, I did.

Plea Tr. 4:18-20. The Court went on to explain to Swinney aspects of the grand jury process and

the rights he was relinquishing by his waiver, and asked:

> THE COURT: And did you understand all of that before you signed the waiver?
> In other words, did your counsel basically explain to you what I've just
> explained?
> THE DEFENDANT: Yes.
> THE COURT: Now, other than the plea agreement that we're going to get to in a
> few minutes, has anybody promised or suggested to you that by waiving
> indictment, you would get a lighter sentence or more favorable treatment by the
> Court?
> THE DEFENDANT: No.
> THE COURT: Has anyone put any force or pressure on you to waive indictment
> today?
> THE DEFENDANT: No.

Plea. Tr. 6:23-7:9.

After accepting Swinney's waiver of indictment as knowing and voluntary and entered

with the full advice of competent counsel, Plea Tr. 7:17-20, the Court went on to question

Swinney about the written plea agreement and statement of facts:

> THE COURT: Do you feel you've had enough time to thoroughly go over this
> plea agreement with your counsel?
> THE DEFENDANT: Yes.
> THE COURT: Have you asked your attorneys all the questions that you have
> about the plea agreement?
> THE DEFENDANT: Yes, I have.
> THE COURT: And have they answered those questions to your satisfaction?
> THE DEFENDANT: To the best of my ability, yes.
>
> ***
>
> THE COURT: All right. Now, I want you to turn to page 13. There are two
> sentences above where your signature appears. This somewhat repeats what

9

we've just done, but I want to make sure you're crystal clear about this. Those
sentences go: "I have read this plea agreement and carefully reviewed every part
of it with my attorney. I understand this agreement and voluntarily agree to it."
Are those two sentences completely true?
THE DEFENDANT: Yes.

Plea Tr. 10:9-11:5. Still later in the colloquy, the Court asked the defendant: "Has anyone put

any force or pressure on you to plead guilty today?," to which the defendant responded "No."

Plea Tr. 34:15-17. Swinney also affirmed that he was "fully satisfied with" his counsel's

representation. Plea Tr. 30:8-10. Accordingly, Swinney unequivocally stated that he accepted the

plea agreement voluntarily and that no one, including his defense counsel, forced or pressured

him into pleading guilty. Moreover, Swinney's sworn statements to this effect are deemed

"conclusively established" because Swinney fails to present clear and convincing evidence

proving their falsity. See Lemaster, 403 F.3d at 222; Fields, 956 F.2d at 1299.

Swinney also argues that his plea was involuntary because he was in pain and was under

the influence of pain medication when he entered his plea. Again, his statements during the plea

colloquy contradict these assertions. The Court discussed Swinney's toothache and his use of

pain medication twice during the plea colloquy, and both times Swinney stated that he was not

affected by pain and that his toothache and medication had no effect on his ability to voluntarily

accept the plea.

THE COURT: Within the last 24 hours, have you taken any medication, whether
by prescription or over the counter, like an aspirin or an Advil?
THE DEFENDANT: Motrin.
THE COURT: A Motrin? And what condition did you take that for?
THE DEFENDANT: I got a toothache.
THE COURT: All right. Now, are you feeling the toothache right now?
THE DEFENDANT: No.
THE COURT: And Motrin is over the counter, correct?
THE DEFENDANT: Correct.

\*\*\*

10

> THE COURT: And in any respect, the toothache that you've had, do you feel
> that's in any way interfered with your ability to communicate with your counsel
> or to think about this case or has contributed in any respect to your decision to
> plead guilty?
> THE DEFENDANT: No.

Plea Tr. 3:21-4:7, 34:18-23. As these exchanges demonstrate, Swinney informed the Court of his

toothache and use of over-the-counter medication and clearly affirmed that neither had affected

or interfered with his decision to plead guilty. Swinney's current allegations that he was in such

pain as to render his plea involuntary are unsupported by any evidence and are therefore

insufficient to overcome the "strong presumption" that his sworn statements during the Rule 11

proceeding were truthful. See White, 366 F.3d at 295.

Although Swinney's sworn statements during the plea colloquy are sufficient to

demonstrate the voluntariness of his plea, the favorable terms of his plea agreement further

support a finding of voluntariness. The single count to which Swinney pleaded guilty exposed

him to a maximum sentence of life imprisonment. See 18 U.S.C. § 1591(b)(1); PSR at 1. The

PSR also calculated Swinney's offense level and criminal history category as placing Swinney in

the guideline range for life imprisonment, with no factors that might warrant a departure from the

guidelines. PSR at 31-32. Moreover, the record contains unrebutted evidence that the

government considered bringing additional charges against Swinney and could have done so

based on the number of victims identified in the Statement of Facts. See Gov't Opp'n at 5; Letter

from Taleek Sherrod Swinney to Gul R. Gharbieh, Esq. (Oct. 15, 2013) [Dkt. No. 41-1 at 38];

Letter from Gul R. Gharbieh, Esq. and Todd Richman, Esq. to Taleek Sherrod Swinney (Oct. 17,

2013) [Dkt. No. 41-1 at 58]. The plea agreement into which Swinney entered, however, charged

Swinney with a single count and limited the maximum sentence to 34 years, an upper limit that

bound not only the parties but also the Court pursuant to Rule 11(c)(1)(C). See Plea Agreement

¶¶ 1, 5. These terms were clearly favorable to Swinney, made it reasonable and prudent for him to accept the agreement, and demonstrate that his acceptance was voluntary. Lastly, the 294 month sentence he received was even less than the outer limit to which the parties agreed.

Accordingly, there is no merit to Swinney's claim that his plea was involuntary.

## C. **Speedy Trial Act Rights**

In Swinney's response, he raises for the first time an additional argument that his waiver of speedy trial rights was involuntary because his counsel failed to inform him that he could not legally waive those rights and pressured him into signing the waiver by telling him that if he did not agree to the waiver the government would file additional charges against him. Swinney Resp. at 11-12; Swinney Resp., Ex. A, Aff. of: Taleek Swinney ("Swinney Aff. 1") ¶¶ 6-7. This assertion is arguably time-barred because it was only explicitly raised in Swinney's response brief, which he filed after the one-year statute of limitations expired. See 28 U.S.C. § 2255(f); Swinney Resp. at 28 (indicating that the response brief was mailed on July 6, 2015). The argument appears to be related, however, to Swinney's earlier contentions that he wanted counsel to move to dismiss the criminal complaint after the 30-day deadline for indictment had passed and that in the Court's Order granting the joint motion to extend time for indictment "the judge failed to make the correct findings which made the motion void" and resulted in a "clear violation of the speedy trial statute." Mot. to Vacate at 5, 21.

Construing Swinney's pro se pleadings liberally and assuming that his Speedy Trial Act argument is not wholly waived, Swinney nonetheless misunderstands the applicable law and fails to demonstrate that his waivers of his Speedy Trial Act rights and of his right to indictment were involuntary. Although a defendant generally cannot waive his right to a speedy trial, the Fourth Circuit provides for an exception "[i]f a defendant affirmatively consents to a motion for a

12

continuance and the reasons for the granting of that motion as garnered from the record are sufficient to support a finding that the ends of justice would be met by granting the motion."[2] United States v. Keith, 42 F.3d 234, 240 (4th Cir. 1994); see also 18 U.S.C. § 3161(h)(7)(A) (2008) (requiring the district court to "set[] forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial"). In that situation, "the defendant cannot take advantage of that discrete period of time covered by the continuance in asserting a violation of the Speedy Trial Act." Id. This rule prevents the defendant "from using the Act as a sword and a shield; sandbagging the court and the government by agreeing to a continuance and then later urging a dismissal using the time covered by the continuance." See id. at 239; see also United States v. Bryant, No. 96-4359, 1998 WL 39393, at *2 (4th Cir. Feb. 2, 1998) (unpublished). Accordingly, Swinney's contention that he could not legally waive his rights under the Act misreads the relevant authority. Swinney was legally capable of consenting to a continuance, and having done so cannot assert that the period of time covered by the continuance constituted a Speedy Trial Act violation.

---

[2] Although it is unclear exactly what error Swinney contends was made in the Court's Order, his argument may relate to this requirement that the reasons for granting a continuance adequately support an "ends of justice" finding; however, Swinney raises this issue only with respect to his arguments that his waiver was involuntary and that his counsel was ineffective and does not argue that the Court lacked sufficient reasons for granting the continuance. Whether or not the Court's Order was sufficient under the Speedy Trial Act has no bearing on whether Swinney could legally waive his right to a timely indictment and whether his agreement to a continuance was voluntary. Moreover, the Court expressly found "that the period of delay [was] excludable [under the Speedy Trial Act] because the reasons for granting the joint motion outweigh[ed] the best interests of the public and the defendant in a speedy trial." See Order to Extend. Swinney does not identify any deficiencies in that finding or argue that there were not sufficient reasons for granting the continuance, nor was the Court required to enumerate those reasons at the time it issued the order. See Zedner v. United States, 547 U.S. 489, 507-08 (2006) (finding that the Speedy Trial Act is ambiguous as to when a district court must set forth its reasons in the record but ruling that the court must at least do so by the time that it rules on a defendant's motion to dismiss under 18 U.S.C. § 3162(a)(2)).

Moreover, Swinney fails to demonstrate that his consent was not freely given. In the parties' joint motion, Swinney agreed "to waive any objection under the Speedy Trial Act" and affirmed that he had consulted with counsel, fully understood all his rights, had read the motion and reviewed it with counsel, and that he "knowing, intentionally, and voluntarily" agreed to it. Mot. to Extend at 2-3. This unambiguous written agreement shows that Swinney's waiver was voluntary. Similarly, Swinney agreed to waive indictment in his plea agreement and confirmed during his plea colloquy that he understood his right to have a grand jury evaluate his case but that he had voluntarily waived his right to that process, Plea Tr. 4:11-7:9, leading the Court to conclude that "based upon all [his] answers to the Court's questions," the Court was "satisfied that [Swinnney] entered [his] waiver with the full advice of competent counsel" and did so "in a knowing and voluntary fashion." Plea Tr. 7:16-20.

Additionally, Swinney's contention that counsel told him the government would seek additional charges should he move to dismiss the complaint demonstrates competent legal advice rather than coercion and shows that the defendant's agreement to the extension of the indictment deadline and to his waiver of indictment benefited him. Letters attached by Swinney to his motion demonstrate that during a meeting on September 30, 2013, Richman and Gharbieh visited Swinney and told him that the government planned to bring six additional charges against him, but that by extending the time for indictment both parties could work towards a pre-indictment plea agreement that would involve just a single count. See Letter from Taleek Sherrod Swinney to Gul R. Gharbieh, Esq. (Oct. 15, 2013); Letter from Gul R. Gharbieh, Esq. and Todd Richman, Esq. to Taleek Sherrod Swinney (Oct. 17, 2013). Swinney ultimately obtained a plea agreement charging him with a single count, as opposed to seven counts. Therefore, agreeing to extend the

time for indictment was clearly favorable to Swinney, which further demonstrates that such agreement was voluntary.

Accordingly, Swinney's contentions regarding the extension of the time to indict and his ultimate waiver of indictment do not merit collateral relief.

### D. Ineffective Assistance of Counsel

The remainder of Swinney's asserted grounds for collateral relief allege ineffective assistance of counsel. To establish ineffective assistance of counsel a movant must satisfy the two-pronged test established by Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, a movant must first show "that counsel's representation fell below an objective standard of reasonableness" according to "prevailing professional norms" and "considering all the circumstances." Id. at 688. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and that "the challenged action might be considered sound trial strategy." Id. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)) (internal quotation marks omitted). With this deferential standard in mind, the reviewing court must make "every effort...to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time" of the challenged conduct. Id.

In addition to overcoming the strong presumption that counsel's performance was professionally reasonable, a movant must show that the deficiencies in counsel's performance were prejudicial to the movant. Id. at 691-92. To establish prejudice, the movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. The Strickland court defined reasonable probability as "a probability sufficient to undermine confidence in the outcome." Id. When a

15

movant's ineffective assistance claim pertains to his guilty plea, the movant must show that "but for counsel's errors, [the movant] would not have pleaded guilty and would have insisted on going to trial." United States v. Mooney, 497 F.3d 397, 401 (4th Cir. 2007) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)) (internal quotation marks omitted). Again, in the absence of "clear and convincing evidence to the contrary," a movant who pleaded guilty is bound by his sworn statements made under oath regarding his satisfaction with counsel. See Fields, 956 F.2d at 1299. Moreover, if the movant cannot demonstrate prejudice, the reviewing court need not consider whether counsel's performance was professionally unreasonable. Id. at 1297 (citing Strickland, 466 U.S. at 697).

Swinney claims that he received ineffective assistance of counsel because his counsel: (1) filed a motion to extend the time for indictment without consulting him and/or against his wishes; (2) failed to file a motion to dismiss the complaint despite the purported violation of his speedy trial rights; (3) did not present evidence of his mental health issues during sentencing; (4) did not argue against sentencing enhancements and failed to argue for downward departures; and (5) failed to file an appeal related to the purported violation of his right to a speedy trial.[3] Although the government does not address this issue, Swinney also argues that his counsel had a

---

[3] Swinney also claims in his initial motion that Nachmanoff misinformed him that victim SG was a minor and that Nachmanoff "failed to investigate" the accuracy of that statement, leading Swinney to admit to the Court that his victims included girls under the age of 18. Mot. to Vacate at 21. Swinney also contends that "the plea was not to having [sic] minors but somehow there was an extra statue [sic] added," id., an assertion that appears to relate to the vulnerable victim enhancement. During the plea colloquy, Swinney affirmed that he was sure that "at least one or two of his victims" was a minor, Plea Tr. 36:7-17; however, neither Swinney nor the Court referred specifically to SG during that exchange. Moreover, the plea agreement demonstrates that the vulnerable victim enhancement related to EP and not to SG; therefore, defendant fails to show that Nachmanoff's alleged misrepresentation constituted ineffective assistance.

16

conflict of interest because Gharbieh was pregnant and because counsel appeared to be on the side of the government. See Mot. to Vacate at 20-21.[4]

### 1. Conflict of Interest

With respect to Swinney's allegations of a conflict of interest, "prejudice is presumed when counsel is burdened by an actual conflict of interest," which would occur if counsel "'actively represented conflicting interests' and...'an actual conflict of interest adversely affected [counsel's] performance.'" Strickland, 466 U.S. at 692 (quoting Cuyler v. Sullivan, 446 U.S. 335, 350 (1980)). Gharbieh did not actively "represent[] individuals with conflicting interests" in the sense required by this standard. See Vinson v. True, 436 F.3d 412, 418 (4th Cir. 2005) (emphasis in original). The mere allegation that Gharbieh's status as a pregnant woman automatically created a conflict of interest is an insufficient basis upon which to find any conflict. Swinney presents no evidence that Gharbieh expressed any concern about the facts pertaining to pregnant women or showed any animus towards him, and his allegations that she "abandoned the case" are persuasively rebutted by Nachmanoff and Richman's sworn statements that they were assigned to the case because Gharbieh was likely to begin maternity leave before the case would be concluded.[5] See Nachmanoff Decl. ¶¶ 3, 4; Richman Decl. ¶¶ 3, 4.

Additionally, Swinney provides no evidentiary support for his contentions that both Gharbieh and Nachmanoff acted "on the government's behalf," Mot. to Vacate at 20, and fails to

---

[4] Additionally, Swinney requests that he "be granted access to FIOA [sic] and Privacy Act Rights" because "there is a possibility of evidence that was withheld from the defendant" that he did not discover due to counsel's alleged ineffective assistance. Mot. to Vacate at 11. In his plea agreement, Swinney voluntarily waived his FOIA and Privacy Act Rights, Plea Agreement ¶ 7, and his reference to the mere "possibility" of withheld evidence does not demonstrate that that waiver should not be enforced, particularly because the Court finds that counsel was not ineffective.

[5] Swinney does not show any prejudice resulting from Gharbieh's reassignment, because he remained continuously represented by the Federal Public Defender's Office and specifically by Richman from the time of his first appearance in the Eastern District of Virginia.

rebut his admissions during the plea colloquy that he was "fully" satisfied with his attorneys'
performance:

> THE COURT: Mr. Swinney, are you fully satisfied with the way your lawyers
> have worked for you in this case?
> THE DEFENDANT: Yes.

Plea Tr. 30:8-11. Accordingly, Swinney's bare allegations do not demonstrate any conflict of
interest that would create a presumption of prejudice.

## 2. Failure to Move to Dismiss the Complaint

Swinney's contentions that he received ineffective assistance of counsel because
Gharbieh and Nachmanoff were ineffective in failing to file a motion to dismiss the complaint
and because Gharbieh instead joined the government's motion to extend time for indictment fail
to establish either the performance or prejudice prongs. As discussed above, the record shows
that Swinney signed the joint motion to extend the time to indict as well as the waiver of
indictment. In both instances he affirmed that he had consulted with counsel, understood his
rights, and voluntarily agreed to the extension of time to be charged by indictment. See Mot. to
Extend at 3; Waiver of an Indictment. Moreover, during the plea colloquy, he responded that he
had thoroughly discussed the waiver of indictment with his counsel and voluntarily agreed to it:

> THE COURT: Now, did you, in fact, sign a waiver of indictment two or three
> days ago?
> THE DEFENDANT: Yes.
> THE COURT: And before you signed that waiver, did you discuss it thoroughly
> with your attorneys?
> THE DEFENDANT: Yes, I did.
>
> ***
>
> THE COURT: Has anyone put any force or pressure on you to waive indictment
> today?
> THE DEFENDANT: No.

18

Plea Tr. 4:15-20, 7:7-9. Accordingly, the record demonstrates that Swinney was involved in and agreed to both the motion to extend time for indictment and the waiver of indictment.

Furthermore, as the government correctly points out, it could have re-filed its complaint against Swinney if he had succeeded in having it dismissed and would likely have been able to obtain a multi-count indictment had Swinney not waived indictment. Therefore, by advising Swinney to agree to extend the deadline for indictment to allow time to negotiate a plea agreement and to waive indictment and enter into a favorable plea agreement, counsel provided objectively competent and reasonable advice to which Swinney agreed. Moreover, the favorableness of the plea agreement in contrast to the potential liabilities Swinney faced demonstrates that counsel's advice did not prejudice him. Swinney provides no evidence of prejudice to the contrary. Therefore, these claims do not satisfy either part of the Strickland test.

### 3. **Mental Health Investigation**

Swinney's contentions that counsel were ineffective by failing to consult a mental health expert and to present evidence of Swinney's purported mental health problems similarly fail. Swinney contends that he has a number of mental health conditions, Mot. to Vacate at 8, and alleges for the first time in his response that he told Nachmanoff that he suffered from PTSD. Not only is this latter contention time-barred, but both it and Swinney's other mental health contentions are entirely contradicted by Swinney's sworn statements during the plea colloquy, when he was asked "Are you at this time under the care of a doctor for any physical or mental condition?" and he responded "No." Plea Tr. 3:18-20. He also failed to provide any information to the Probation Office referencing PTSD,[6] and none of the various letters submitted by Swinney

---

[6] The PSR states that "[t]he defendant reports no history of psychological or psychiatric treatment and there is no documented evidence to suggest otherwise." PSR at 31. The only reference in the PSR approaching a mental health issue is Swinney's statement that he recalled

and his family and friends in support of his sentencing position reference any mental health issues. Therefore, there is nothing to indicate that counsel knew or should have known of any mental health problems that should have been raised during the sentencing proceeding. This absence of evidence shows both that counsel's conduct did not fall below an objective standard of reasonableness and that Swinney did not suffer any prejudice due to their conduct.

### 4. Sentencing Arguments

Swinney alleges that counsel failed to argue against the application of the vulnerable victim and leadership enhancements to the offense level and failed to argue for the acceptance of responsibility credit.[7] Contrary to Swinney's assertions, both the PSR and the sentencing memorandum prepared by Nachmanoff and Richman demonstrate that counsel did argue against the four-level leadership enhancement imposed by the PSR and argued for a two-level reduction for acceptance of responsibility. See Sentencing Mem. at 4, 6; PSR at A-1-2 (noting defendant's objections to the guidelines calculations). Therefore, Swinney's argument regarding the leadership and acceptance of responsibility enhancements are without merit.

Furthermore, Swinney agreed to the vulnerable victim enhancement as part of the plea agreement and therefore his counsel could not have opposed that enhancement at the sentencing stage. Swinney contends that the vulnerable victim enhancement was unnecessary because EP chose to be with him and was not a minor when they met, Mot. to Vacate at 13, but the enhancement does not require that the victim have been a minor, only that the victim was in

---

having "had behavioral problems while in elementary school and the school tried to place him on Ritalin, but his family declined to place him on medication." Id. That reference is insufficient to establish any serious mental health problem that should have been investigated by counsel.
[7] Swinney argues that "his timely entering of the plea agreement" entitled him to receive a two-level reduction in offense level. Mot. to Vacate at 13. When discussing his purported mental health issues, Swinney also refers to "three downward departures" that counsel failed to request, id. at 8, but does not identify those specific departures, and therefore does not demonstrate that counsel's performance was unreasonable or prejudicial on those grounds.

some way "particularly susceptible to the criminal conduct" and that the defendant was aware of that vulnerability. United States v. Royal, 442 F. App'x 794, 797 (4th Cir. 2011) (unpublished) (quoting U.S.S.G. § 3A1.1 cmt. n.2) (internal quotation marks omitted). It was objectively reasonable for counsel to agree to the vulnerable victim enhancement to obtain the favorable plea agreement, particularly because the advisory guidelines range would have been the same regardless of whether that enhancement was applied.[8] This lack of impact on Swinney's calculated offense level also means that Swinney fails to demonstrate prejudice and therefore cannot establish either prong of the Strickland ineffective assistance test on this issue.

### 5. Restitution

Swinney's arguments regarding restitution also do not demonstrate any deficiency in counsel's performance or any resulting prejudice. Swinney does not clearly identify any purported error in the calculation of the restitution amount of $540,622; rather, he unintelligibly characterizes it as "a mere verbal estimate of illegal proceeds obtained from acts of prostitution from the victims" and states that he does not object to paying restitution for a number of other costs such as a "victim's transportation" and "lost [sic] of income from [sic] legal job." Mot. to Vacate at 24. Swinney's primary contention appears to be that Nachmanoff did not adequately counsel him regarding the restitution order because Nachmanoff did not present the order to Swinney until after he entered his guilty plea.[9] Id. Once again, Swinney's voluntary plea

---

[8] The PSR calculated Swinney's adjusted offense level to be 47, see PSR at 47; however, any guidelines calculation resulting in a score greater than 43 is reduced to 43. U.S.S.G. Ch. 5, Pt. A, Application Note 2. Even if the vulnerable victim enhancement had not been used, Swinney's offense level would only have been reduced to 45, which means the total offense level of 43 would still have applied.

[9] Swinney also argues that a victim "SD" was named in the restitution order but that he did not know of this victim during the investigation. Mot. to Vacate at 24. No victim SD is named in the plea agreement and the government does not address this issue; however, as discussed above, Swinney agreed that the identities of all victims remained unknown at the time of his plea

agreement and sworn statements rebut these contentions. Swinney agreed that restitution was

mandatory and agreed to defer the imposition of restitution until "after sentencing without

limitation" because "determination of the identities, addresses, and loss amounts for all victims"

would be "a complicated and time consuming process." Plea Agreement ¶ 10.

At his plea colloquy, the Court confirmed Swinney's agreement to pay the then-

undetermined restitution amount:

> THE COURT: ...[A]nd restitution is described in paragraph 10, and again, there's no
> specific numbers issued here, but you are aware as part of this plea agreement and your
> guilty plea that you're exposed to both having to make restitution to the victims and
> forfeiting various property. Do you understand that?
> THE DEFENDANT: Yes.

Plea Tr. 26:13-21. Accordingly, Swinney explicitly and voluntarily agreed to pay restitution

before knowing the amount of restitution that would be required. Swinney therefore fails to

demonstrate that Nachmanoff's conduct in presenting the restitution order to Swinney after he

pleaded guilty was objectively unreasonable. With respect to prejudice, Swinney provides only

the conclusory allegation that he would not have accepted the plea agreement had he known the

restitution amount to be imposed, Mot. to Vacate at 24; however, Swinney not only agreed to a

delayed calculation of restitution but also voluntarily signed the restitution order during the

sentencing hearing. See Restitution Order at 2. Swinney therefore fails to demonstrate that

counsel was ineffective with respect to the restitution imposed.

### 6. Failure to Appeal

Finally, Swinney argues that counsel was ineffective for failing to adequately consult

with him regarding an appeal, for failing to file a notice of appeal after Swinney requested that

agreement. Plea Agreement ¶ 10; see also id. ¶ 6 ("Swinney...prostituted women and girls,
including at least the following women...."). Therefore, even if SD was unknown to Swinney
during the investigation, her inclusion in the restitution order does not violate the terms of the
plea agreement or demonstrate ineffective assistance of counsel.

counsel do so, and for telling Swinney that he had no right to appeal. See Mot. to Vacate at 11. If a client expressly requests that defense counsel notice an appeal, counsel's failure to do so constitutes deficient performance. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000); see also Gordon v. Braxton, 780 F.3d 196, 200 (4th Cir. 2015). In the absence of an explicit request to appeal, defense counsel is required to consult with his client regarding an appeal only "when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Id. at 480; see also United States v. Cooper, 617 F.3d 307, 312-13 (4th Cir. 2010). A movant's acceptance of a guilty plea is "a highly relevant factor" in determining whether a failure to consult was professionally unreasonable, "because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." Id. The court must also consider "such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights" in order to determine whether counsel's failure to consult was objectively unreasonable. Id.

If the movant demonstrates that counsel's performance was deficient either because he ignored an explicit request to appeal or because he unreasonably failed to consult, the movant must then show prejudice by demonstrating "a reasonable probability that he would have filed an appeal 'but for' counsel's failure to file or consult." Gordon, 780 F.3d at 200 (citing Flores-Ortega, 528 U.S. at 484). This showing does not require that the defendant's appeal have merit. Id.

In Swinney's initial motion, he contends that he wanted to appeal because "he was not satisfied with the outcome of the [sentencing] proceeding" and had expected to receive a lesser sentence. Mot. to Vacate at 11. Swinney states that he "demonstrated interest in appealing by writing counsel...and calling the day after he was sentenced" and "by relaying a third party message through counsel staff." Id. Swinney also alleges that Nachmanoff did not adequately consult with him about the possibility of appealing the restitution order. Id. at 24. In Swinney's response brief, he shifts his argument to contend that he wanted to appeal the purported violation of his speedy trial rights, which he claims would have been a nonfrivolous ground for appeal, and that he would have appealed but for Nachmanoff's failure to consult with him about filing an appeal. Swinney Resp. at 16-17.

Swinney's inconsistent assertions, in combination with the contradictory record evidence, fail to demonstrate that he requested counsel to file a notice of appeal. Both Richman and Nachmanoff submitted sworn affidavits stating that Swinney did not ask them to file an appeal. Specifically, Nachmanoff avers that he spoke with Swinney hours after his sentencing on February 7, 2014 as well as during an in-person meeting on February 12, 2014, and that Swinney did not raise the issue of filing an appeal during either discussion or at any other point. Nachmanoff Decl. ¶ 6. Nachmanoff advised Richman in writing of the content of those discussions and, according to that contemporaneous correspondence, Swinney never asked Nachmanoff to file an appeal or even mentioned the possibility. Richman Decl. ¶ 7. Similarly, Richman met with Swinney in person for several hours on February 11, 2014, and he avers that Swinney never discussed filing an appeal or requested that he file one. Id. ¶ 6. According to both attorneys, Swinney never contacted anyone else at the Federal Public Defender's Office regarding an appeal. Id. ¶ 8; Nachmanoff Decl. ¶ 8.

Swinney attaches his own affidavit to his response brief stating that he "instructed counsel that he wanted to appeal his Speedy Trial violation," Swinney Aff. 1 ¶ 9; however, in his initial motion, he states that he told Nachmanoff that he wanted to appeal because he was displeased with the length of the sentence imposed. Mot. to Vacate at 11. That initial motion makes no mention of an appeal based on a purported Speedy Trial Act violation. This inconsistency, as well as Swinney's numerous misrepresentations of the record, establish that his affidavit is not worthy of belief, and the Court concludes that Swinney never explicitly requested that counsel file an appeal.

Therefore, the Court must determine whether counsel was constitutionally obligated to consult with Swinney about an appeal. Swinney fails to show that a rational defendant in his position would have wanted to appeal. As discussed supra, Swinney voluntarily entered into a plea agreement, thereby reflecting a desire to terminate judicial proceedings. In that plea agreement, Swinney waived his right to appeal his conviction and any sentence unless the sentence imposed was greater than 34 years. This Court imposed a sentence of 294 months, which was almost 10 years lower than the maximum agreed to in the plea and was significantly lower than the statutory maximum of life imprisonment and the guidelines range of life imprisonment. Swinney also agreed to pay a restitution amount to be calculated after the plea was entered, and then agreed to the amount calculated at the time of sentencing. As a result, nothing in the terms and conditions of the sentence imposed on Swinney constitute meritorious grounds for an appeal. Furthermore, for the reasons stated above, there is no indication that Swinney reasonably demonstrated to counsel that he was interested in appealing. Therefore, reasonable counsel were not required to consult with Swinney about the possibility of an appeal.

Additionally, as discussed supra, Swinney's arguments regarding the Speedy Trial Act lack any legal foundation. Consequently, he fails to establish any nonfrivolous grounds for appeal and none of his claims concerning counsel's failure to consult with him about filing an appeal have any merit.

Accordingly, Swinney fails to establish that he is entitled to collateral relief due to ineffective assistance of counsel.

### III.   CONCLUSION

For the above-stated reasons, Swinney's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody fails to establish any violations of the Constitution or laws of the United States or that the conviction or sentence at issue could in any respect be considered a miscarriage of justice. Swinney had the assistance of competent counsel throughout this case, and his decisions to waive the Speedy Trial Act and indictment and to plead guilty to a one-count criminal information were not only uncoerced, knowing, and voluntary, but were extremely favorable to him because he was able to avoid a lifetime sentence. Moreover, his counsel's performance was effective throughout their representation of Swinney. Accordingly, the motion will be dismissed by an appropriate Order to be issued with this Memorandum Opinion.

Entered this 31 day of December, 2015.

Alexandria, Virginia

/s/

Leonie M. Brinkema
United States District Judge

26